UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

IN RE:

    KATHLEEN ANN HICKEY,                       Case No. 13-33320-dof
               Debtor.                                        Chapter 7 Proceeding
                                                              Hon. Daniel S. Opperman
_____/

## OPINION OVERRULING DEBTOR'S OBJECTIONS TO CLAIM NOS. 9, 10, 11 AND 12

The Debtor, Kathleen Hickey, objects to certain claims filed by the Chapter 7 Trustee, Collene Corcoran, in this case. The Trustee filed these claims because these creditors failed to do so after the initial claims deadline. Each claim prepared and filed by the Trustee was based upon the information supplied by the Debtor for each creditor, including the amount owed to each creditor as stated in the Debtor's Schedules. After the Trustee filed these claims, Debtor's counsel contacted the Trustee and requested that the Trustee allow the Debtor time to object to these claims. The Trustee did so, but after months of waiting she finalized her Annual Report and after waiting over two months, disbursed monies pursuant to her Final Report. Because the Debtor waited too long to object to these claims, the Court overrules the Debtor's objections.

### Findings of Fact

The Debtor filed her petition seeking relief under Chapter 7 of the Bankruptcy Code on September 30, 2013. In her Schedules filed on October 10, 2013, the Debtor did not list any pending lawsuits and listed various unsecured creditors in Schedule F, including the following:

| | | |
|---|---|---|
| Care Credit<br>GE Capital Bank<br>P.O. Box 960061<br>Orlando, FL 32896<br>Account No. xx-7801 | 2009 Misc. Purchases | $4,429 |

1

| Manor Care Health Facility 4208<br>P.O. Box 637602<br>Cincinnati, OH 45238<br>Account No. xx-4208 | 2013 Nursing Home | $8,288 |
| --- | --- | --- |
| Sam's Club<br>P.O. Box 981084<br>El Paso, TX 79998<br>Account No. xx-3587 | 2008 Groceries, Gas,<br>Misc. household goods | $6,178 |
| Swartz Ambulance Services, Inc.<br>G1225 Hill Road<br>Flint, MI 48507<br>Account No. xx-2247 | 2012 Ambulance | $ 603 |

Also of particular note, the Debtor indicated that she did not have any contingent and disputed claims or any personal property of any kind that was not already listed. As with every debtor, the Debtor made the following declaration concerning her Schedules:

DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR

>I declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of 17 sheets, and that they are true and correct to the best of my knowledge, information, and belief.
>
>Date:   October 10, 2013              Signature: /s/ Kathleen Ann Hickey

Thereafter, this case progressed as a routine Chapter 7 matter with the Debtor attending a first meeting of creditors, the Trustee concluding that no assets were available to administer, and the Debtor receiving a discharge on January 9, 2014. Less than a week later, the case was closed.

On October 16, 2015, the Debtor filed a Motion to Allow Debtor to Reopen Chapter 7 Case. As it turned out, the Debtor did have an asset, a lawsuit involving the untimely death of her husband. As recited in this Motion:

>5.     After discharge on October 5, 2015, the Debtor informed counsel that she is currently in the middle of litigation in a wrongful death lawsuit in which she may be entitled to a settlement.
>
>. . .
>
>7.     This claim was not originally listed by the Debtor on her Schedules

as the Debtor was not aware that a claim for wrongful death was viable.

8. The Debtor requests that this Court reopen the case to allow the Debtor to amend her Schedules properly and to allow the Trustee to investigate this asset and to administer this asset for the benefit of the Creditors.

Accordingly, the Court reopened this case and since the original Chapter 7 Trustee retired, Ms. Corcoran was appointed as the successor Chapter 7 Trustee. Ms. Corcoran then filed an Interim Report, hired counsel, and in March of 2017 determined that assets would be available to disburse to creditors and gave notice of that possibility to all parties. A deadline for filing proofs of claim was set and the Trustee filed a Motion to Approve Compromise of the lawsuit described by the Debtor in her Motion to Reopen. As recited by the Trustee in her Motion:

5. The Debtor was a party to a lawsuit pending in Genesee County Circuit Court, case no. 15-104265-NH, which was filed in 2015 for medical malpractice on behalf of her deceased husband.

6. The Debtor never disclosed this claim on her schedules.

7. Upon information and belief, the Trustee was informed that the Debtor has already received $75,000 as a settlement from one of the defendants in this lawsuit, and it was not sent to the Trustee, nor was this settlement approved by the Court.

8. After the Trustee was appointed, the lawsuit continued and the parties participated in a facilitation, which resulted in a settlement in favor of the estate in the gross amount of $45,000.

9. The Trustee believes that this settlement is the most that she will receive in the case and that she should accept this settlement offer.

10. Special Counsel for the Debtor will receive its one third contingency fee on the gross amount, and expenses. These fees and expenses are subject to Bankruptcy Court approval by separate application.

11. By accepting this settlement, the Trustee avoids the risk, should this case proceed to trial, that she would receive less than the settlement amount if this case were tried to completion, and avoids incurring additional costs in this case.

12. Therefore, the Trustee believes that this compromise is in the best interest of creditors.

No party filed an objection to the Trustee's Motion to Compromise, and this Court granted that Motion and approved the settlement terms by way of an Order dated April 10, 2017. On June 28, 2017, after the June 1, 2017 deadline for filing claims, the Trustee filed claims on behalf of Care Credit, Manor Health Care Facility, Sam's Club, and Swartz Creek Ambulance Service, Inc. Notices of these claims were electronically served on counsel for the Debtor. After approval of the settlement, the Trustee also requested approval of compensation to special counsel and the Court approved that application on September 5, 2017. During this interim period, the Trustee also filed a Notice of Intent to File Final Report, which was again served electronically on Debtor's counsel. On October 23, 2017, the Trustee filed a Final Report detailing her plan payments to various creditors. Exhibit D of her Final Report discloses the following proposed distribution:

> Timely claims of general (unsecured) creditors totaling $37,668.53 have been allowed and will be paid *pro rata* only after allowed administrative and priority claims have been paid in full. The timely allowed general (unsecured) dividend is anticipated to be 53.4 percent, plus interest (if applicable).

Timely allowed general (unsecured) claims are as follows:

| Claim No. | Claimant | Allowed Amt. of Claim | Interim Payments to Date | Proposed Amount |
|---|---|---|---|---|
| . . . | | | | |
| 9 | Care Credit | $4,429.00 | $0.00 | $2,366.43 |
| 10 | Manor Health Care Facility | $8,288.00 | $0.00 | $4,428.31 |
| 11 | Sam's Club | $6,178.00 | $0.00 | $3,300.93 |
| 12 | Swartz Creek Ambulance Service, Inc. | $ 603.00 | $0.00 | $ 322.19 |

Again, the Trustee's Final Report was electronically served on Debtor's counsel. No objection to the Final Report was filed and this Court entered an Order on January 2, 2018 authorizing the payment of final fees and expenses to the Trustee. The delay between the filing of

the Final Report and the January 2, 2018 Order was caused by the request of Debtor's counsel to the Trustee to allow counsel time to object to certain claims. On January 3, 2018, the Trustee filed with this Court a Certificate of Distribution. A week later, Debtor's counsel filed objections to the claims of Care Credit, Manor Health Care Facility, Sam's Club, and Swartz Creek Ambulance Service, Inc. identified as Claim Nos. 9, 10, 11, and 12, respectively. As to all claims, the Debtor objects that no supporting documentation was attached to the claim to substantiate the Debtor's liability that the claim was unenforceable against the Debtor under applicable state law and that the Debtor has a financial interest in the claim being disallowed because all timely claims filed by the claimant would be paid in full and the surplus would be refunded to the Debtor. Additionally, as to Manor Health Care Facility, the Debtor stated that the claim was really for her deceased husband's care and should be directed to his estate and not paid by the Debtor or her bankruptcy estate.

The Trustee concedes that some funds would be paid to the Debtor if only timely filed claims filed by the respective claimant were paid. Based on the Trustee's Final Report, the Court's rough calculation of the amount at issue available for the Debtor is approximately $2,000-$3,000. The Trustee timely responded to the Debtor's objections, generally alleging that under Federal Rule of Bankruptcy Procedure 3004 that a trustee is allowed to file a claim for a creditor 30 days after the expiration of the claims deadline. Also, the Trustee states that the claims she prepared were based upon the Schedules prepared by the Debtor which remained in place and not amended during the course of this Chapter 7 proceeding. Finally, the Trustee states the following:

> . . . The Trustee argues that the Debtor's Objection to the Proof of Claim was filed too late, as the Final Report was filed with the Court by the U.S. Trustee's Office on October 23, 2017, and the Final Distribution was made to creditors on January 3, 2018. This objection to the claim was filed a week after the final distribution was made to creditors; as such, there are no more funds in the estate, all creditors having been paid pursuant to the terms stated in the Final Report. The Debtor failed to object to the Final Report, and failed to object to the proof of claim for six months before the distribution to creditors was made. More importantly, counsel for the

Debtor indicated to the Trustee via an email correspondence on November 14, 2017 that the Debtor was <u>not</u> intending to pursue any claims objections. Because the Debtor waited too long, the objection is now untimely and moot, since all of the funds have been distributed by the estate.

The Court heard arguments on March 21, 2018. Given the press of other Court business that day and the need to detail the sequence of events in this case, the Court took this matter under advisement.

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157, 28 U.S.C. § 1334, and E.D. Mich. LR 83.50. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate) and (B) (allowance or disallowance of claims against the estate).

## Applicable Authorities

### Right of Trustee to File Claim

Rule 3004. Filing of Claims by Debtor or Trustee

> If a creditor does not timely file a proof of claim under Rule 3002(c) or 3003(c), the debtor or trustee may file a proof of the claim within 30 days after the expiration of the time for filing claims prescribed by Rule 3002(c) or 3003(c), whichever is applicable. The clerk shall forthwith give notice of the filing to the creditor, the debtor and the trustee.

### Equitable Estoppel

Equitable estoppel can bar a party from litigating certain claims or pursuing certain arguments. As stated by the Sixth Circuit Court of Appeals, the elements of an equitable estoppel claim are:

> (1) there must be conduct or language amounting to a representation of material fact; (2) the party to be estopped must be aware of the true facts; (3) the party to be estopped must intend that the representation be acted on, or the party asserting the estoppel must reasonably believe that the party to be estopped so intends; (4) the party asserting the estoppel must be unaware of the true facts; and (5) the party asserting the estoppel must reasonably or justifiably rely on the representation to his

detriment.

*Sprague v. General Motors Corp.*, 133 F.3d 388, 403 (6th Cir. 1998) (citing *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1298 (6th Cir. 1991), *abrogated on other grounds by M & G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926 (2015)).

Analysis

Even if the Debtor's substantive objections were valid, equitable and estoppel principles preclude granting the Debtor the relief she seeks. First, the Court is struck by the Debtor's failure to amend either Schedules B or F after this case was reopened, even though the Debtor specifically requested that relief and the Debtor had over two years to amend her Schedules, which is a relatively straightforward and simple process. The Debtor's original Schedules give no indication that any claims were contingent or disputed and, in fact, contain many details as to the nature of each claim, including the partial account number, the reason for the claim, and a specific dollar amount. If the Debtor thought her Schedules were inaccurate, she could have amended these Schedules as early as February of 2015.

Second, the Schedules were signed by the Debtor under penalty of perjury. Perhaps this act does not mean much to some parties, but it means a lot to this Court and the bankruptcy process. All entities involved - debtors, creditors, trustees, and courts - expect these papers to be accurate and rely upon that accuracy. Here, if the Debtor had a reservation about whether she owed these funds, a simple indication that the obligation is disputed would have saved all involved.

Also, the Debtor, through counsel, was timely advised of the progress being made by the Trustee in regard to the hiring of an attorney, the negotiations to compromise a claim, the approval of that compromise, the filing of various claims, and then the filing of the proposed distribution by the Trustee in her Annual Report. After all of that notice, however, the Debtor continued to do nothing. Even after the Trustee filed her Proofs of Claim, the statements made by counsel at oral

7
13-33320-dof    Doc 94    Filed 05/02/18    Entered 05/02/18 11:31:21    Page 7 of 9

argument make it clear that there was a dialogue between Debtor's counsel and the Trustee regarding the Debtor's misgivings about the claims filed by the Trustee. In response to the Debtor's concerns and at counsel's request, the Trustee waited, even though she was under no duty or obligation to do so. After waiting more than a reasonable amount of time, the Trustee obtained approval of her Final Report and began distribution to creditors. Only after the Trustee sent checks to creditors did the Debtor finally act. Now, after all monies have been sent out, the Debtor seeks to have this Court disallow the claims and, by extension, ask the Trustee to take all reasonable steps to recoup these funds, redistribute these funds to other creditors, and, if the Trustee is completely successful, pay a modest surplus to the Debtor.

    This asks too much of the Trustee and the bankruptcy system. The Debtor was afforded more than ample opportunity to amend her Schedules, but did not do so. The Debtor was afforded more than ample opportunity to object to the claims filed by the Trustee, but did not do so. The Debtor was afforded the courtesy by the Trustee of waiting for the completion of the Trustee's Final Report, but took no action. With these facts, the Court finds that the Debtor is estopped from asserting any objection to claims. Further, as a matter of equity, the Court also concludes that the Debtor's objections to claims must be overruled and the distribution to creditors remain as stated in the Trustee's Final Report.

8

13-33320-dof    Doc 94    Filed 05/02/18    Entered 05/02/18 11:31:21    Page 8 of 9

Accordingly, the Court overrules the objections of the Debtor to Claim Nos. 9, 10, 11, and 12.  The Trustee is directed to prepare an order consistent with this Opinion and the entry of order procedures of this Court.

**Signed on May 02, 2018**



/s/ Daniel S. Opperman
**Daniel S. Opperman**
**United States Bankruptcy Judge**